UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DASHAWN PERRY, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:18-cv-1709 (KAD) |
| | : | |
| RICHARD FUREY, et al. | : | |
| *Defendants*. | : | November 7, 2018 |

## INITIAL REVIEW ORDER

On October 15, 2018, the plaintiff, Dashawn Perry, an inmate currently confined at the Osborn Correctional Institution ("Osborn") in Somers, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 against five state Department of Correction ("DOC") officials in their individual and official capacities: Health Services Administrator Richard Furey, Dr. Gary Robert Freston, Dr. Wright, Correction Officer Ayala, and Warden Gary Wright. (ECF 1). Although not explicitly stated, the plaintiff appears to be suing the defendants for acting with deliberate indifference to his serious medical needs, in violation of his Eighth Amendment protection against cruel and unusual punishment. He requests damages and injunctive relief in the form of specialized medical care. *Id.* at 6. On November 5, 2018, Magistrate Judge William I. Garfinkel granted the plaintiff's motion to proceed *in forma pauperis*. *See* Order No. 8.

**Standard of Review**

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the

complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**Allegations**

On January 6, 2018, the plaintiff sustained a very painful injury to his left ankle while playing basketball during outside recreation at Osborn. Compl. ¶ 1. He immediately went to the medical unit at Osborn seeking treatment. *Id.* at ¶¶ 1-2. There, he was evaluated by nursing staff who refused to divulge their names to the plaintiff. *Id.* at ¶ 2. The plaintiff requested medication to alleviate the pain he was experiencing along with an x-ray, an appointment with a physician, and a bottom-bunk pass, but the nursing staff denied his requests. *Id.* at ¶¶ 2-3.

The plaintiff returned to his housing unit and wrote a request to Administrator Furey, but Furey did not reply. Compl. ¶ 3. Several days later, the plaintiff saw Furey in one of the hallways at Osborn, told him about his painful condition, and asked him about his failure to respond to the request he had written to him. *Id.* Furey responded, "Too bad, you should [not] have . . . come to prison," and then walked away. *Id.*

The plaintiff continued to write requests to correction officers, counselors, and medical personnel about his condition, but none of them responded. Compl. ¶ 4. After waiting nearly a month for treatment, the plaintiff was called to the medical unit and evaluated by Dr. Freston. *Id.* at ¶ 5. Freston "did nothing" for the plaintiff's pain, but he ordered an x-ray and consultation at the UConn Health Center. *Id.* Meanwhile, the plaintiff was forced to climb up and down his bunk with the painful ankle injury. *Id.*

While at the UConn Health Center, a physician provided the plaintiff with a treatment plan, but Dr. Freston and Administrator Furey failed to ensure that the treatment plan was followed by medical staff at Osborn. Compl. ¶ 6. The plaintiff wrote another formal request to Furey on February 26, 2018. *Id.* at ¶ 7. Furey responded on March 13, stating that the plaintiff had a medical appointment scheduled with Dr. Wright. *Id.* However, Dr. Wright told the plaintiff that he had to submit a formal request before any evaluation. *Id.* The plaintiff complied, but he never received an appointment with Dr. Wright or even a reply to the formal request. *Id.* Several months later, Furey finally responded to one of the plaintiff's requests, stating that the plaintiff had an appointment scheduled in one week to be evaluated by Dr. Wright. *Id.* at ¶ 8.

On April 11, 2018, the plaintiff was called to the medical unit for an appointment with Dr. Wright. Compl. ¶ 9. While he was waiting in the medical unit holding area, another inmate asked the plaintiff if he could take his vital signs, but the plaintiff refused, stating that he was there to see Dr. Wright and that his vital signs were confidential. *Id.* The inmate insisted that he wanted to take the plaintiff's vital signs, but the plaintiff adamantly refused. *Id.* Correction Officer Ayala then interfered and told the plaintiff that, if he did not let the inmate take his vital signs, he would write him a disciplinary

report. *Id.* The plaintiff still refused, and Ayala then sent him back to his housing unit. *Id.* The plaintiff was unable to see Dr. Wright. *Id.* at ¶ 10.

The plaintiff filed a formal complaint to Warden Wright explaining that Ayala had refused to allow him to see the medical doctor at Osborn, but Warden Wright did not respond. Compl. ¶ 10. The plaintiff then followed up an administrative remedy/grievance, which Warden Wright rejected on the ground that the plaintiff never filed an inmate request form. *Id.* The plaintiff did, however, file a request for submitting his grievance. *Id.* The plaintiff later spoke with Warden Wright as he toured his housing unit. *Id.* Wright told him, "Nothing goes up the chain of command without [my] approval." *Id.* The plaintiff told Wright that he believed Wright was obstructing the administrative remedy process, to which Wright replied, "Sue me, I don't care." *Id.*

**Discussion**

The plaintiff brings this §1983 action claiming that all defendants acted with deliberate indifference to his serious medical needs. Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his need was serious and that defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105).

Construing the allegations and the inferences that could be drawn therefrom, liberally, the plaintiff has stated a plausible Eighth Amendment claim against the defendants for refusing medical treatment, delaying medical treatment, and/or interfering with his ability to obtain medical treatment for his allegedly painful injury. Thus, the

Eighth Amendment claim may proceed against the defendants in their individual capacities for damages and in their official capacities for injunctive relief.[1]

**ORDER**

(1) The Eighth Amendment claim for deliberate indifference to medical needs may proceed against the defendants in their individual capacities for damages and in their official capacities for injunctive relief.

(2) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

(3) The Clerk shall verify the current work addresses for Furey, Freston, Ayala, Dr. Wright, and Warden Wright with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint [Doc.#1] to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The defendants shall file their response to the complaint, either an answer or

---

[1] The plaintiff may not sue state officials in their official capacities for damages. 28 U.S.C. § 1915A(b)(2); *Kentucky v. Graham*, 473 U.S. 159 (1985).

motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

It is so ordered.

Dated at Bridgeport, Connecticut this 7th day of November 2018.

_____/s/_____
Kari A. Dooley
United States District Judge