## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DASHAWN PERRY, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:18-CV-1709 (KAD) |
| | : | |
| RICHARD FUREY, et al. | : | |
| *Defendants*. | : | September 16, 2019 |

### MEMORANDUM OF DECISION RE: MOTION FOR PRELIMINARY INJUNCTIVE RELIEF (DE#28)

**Preliminary Statement of the Case**

On October 15, 2018, Plaintiff, Dashawn Perry, a *pro se* inmate currently

confined at the Osborn Correctional Institution ("Osborn") in Somers, Connecticut,

brought a civil action under 42 U.S.C. § 1983 against five state Department of Correction

officials ("Defendants") for violating his Eighth Amendment protection against cruel and

unusual punishment:  Health Services Administrator Richard Furey, Dr. Cary Freston,

Dr. Johnny Wright, Correction Officer Ayala, and Warden Gary Wright.  Compl. (DE#1).

Plaintiff claimed that Defendants acted with deliberate indifference to his serious medical

needs, which stemmed from an ankle injury he sustained during recreation at Osborn.

*See* Initial Review Order (DE#9) 4-5.  This Court permitted his Eighth Amendment claim

to proceed against Defendants in their individual capacities for damages and in their

official capacities for injunctive relief.  *Id.* at 5.  Defendants answered the complaint on

January 18, 2019.  Answer (DE#18).

On July 22, 2019, Plaintiff filed the instant motion for preliminary injunctive

relief, claiming that Defendants are continuing to deprive him of "meaningful medical

services and reasonable accommodation[s]" for his ankle injury, from which he endures

ongoing pain.  Mot. for Prelim. Inj. (DE#28) at 3.  He seeks injunctive relief in the form

of single-cell status, a bottom bunk assignment, pain medication, "in-cell feed back

status," a "light duty work assignment," and "medical doctor attention."  *Id.* at 1-2.

Defendants have filed an objection to the motion, contending that Plaintiff is receiving

medical treatment for his injury and that he cannot establish either irreparable harm in the

absence of such preliminary injunctive relief or a substantial likelihood of success on the

merits of his Eighth Amendment claim.  Defs.' Obj. to Pl.'s Mot. for Prelim. Inj. ("Defs.'

Obj.") (DE#29), 6-9.  For the following reasons, Plaintiff's motion is DENIED.

### Background

The Court hereby incorporates the facts giving rise to the Complaint as stated in

the Initial Review Order:

> On January 6, 2018, [Plaintiff] sustained a very painful injury to his left
> ankle while playing basketball during outside recreation at Osborn. Compl.
> ¶ 1.  He immediately went to the medical unit at Osborn seeking treatment.
> *Id.* at ¶¶ 1-2.  There, he was evaluated by nursing staff who refused to
> divulge their names to [Plaintiff].  *Id.* at ¶ 2.  [Plaintiff] requested
> medication to alleviate the pain he was experiencing along with an x-ray,
> an appointment with a physician, and a bottom-bunk pass, but the nursing
> staff denied his requests. *Id.* at ¶¶ 2-3.
>
> [Plaintiff] returned to his housing unit and wrote a request to Administrator
> Furey, but Furey did not reply.  Compl. ¶ 3.  Several days later, [Plaintiff]
> saw Furey in one of the hallways at Osborn, told him about his painful
> condition, and asked him about his failure to respond to the request he had
> written to him.  *Id.*  Furey responded, "Too bad, you should [not] have . . .
> come to prison," and then walked away.  *Id.*
>
> [Plaintiff] continued to write requests to correction officers, counselors, and
> medical personnel about his condition, but none of them responded.  Compl.
> ¶ 4.  After waiting nearly a month for treatment, [Plaintiff] was called to the
> medical unit and evaluated by Dr. Freston.  *Id.* at ¶ 5.  Freston "did nothing"
> for [Plaintiff]'s pain, but he ordered an x-ray and consultation at the UConn
> Health Center.  *Id.*  Meanwhile, [Plaintiff] was forced to climb up and down
> his bunk with the painful ankle injury.  *Id.*

While at the UConn Health Center, a physician provided [Plaintiff] with a treatment plan, but Dr. Freston and Administrator Furey failed to ensure that the treatment plan was followed by medical staff at Osborn. Compl. ¶ 6. [Plaintiff] wrote another formal request to Furey on February 26, 2018. *Id.* at ¶ 7. Furey responded on March 13, stating that [Plaintiff] had a medical appointment scheduled with Dr. Wright. *Id.* However, Dr. Wright told [Plaintiff] that he had to submit a formal request before any evaluation. *Id.* [Plaintiff] complied, but he never received an appointment with Dr. Wright or even a reply to the formal request. *Id.* Several months later, Furey finally responded to one of [Plaintiff]'s requests, stating that [Plaintiff] had an appointment scheduled in one week to be evaluated by Dr. Wright. *Id.* at ¶ 8.

On April 11, 2018, [Plaintiff] was called to the medical unit for an appointment with Dr. Wright. Compl. ¶ 9. While he was waiting in the medical unit holding area, another inmate asked [Plaintiff] if he could take his vital signs, but [Plaintiff] refused, stating that he was there to see Dr. Wright and that his vital signs were confidential. *Id.* The inmate insisted that he wanted to take [Plaintiff]'s vital signs, but [Plaintiff] adamantly refused. *Id.* Correction Officer Ayala then interfered and told [Plaintiff] that, if he did not let the inmate take his vital signs, he would write him a disciplinary report. *Id.* [Plaintiff] still refused, and Ayala then sent him back to his housing unit. *Id.* [Plaintiff] was unable to see Dr. Wright. *Id.* at ¶ 10.

[Plaintiff] filed a formal complaint to Warden Wright explaining that Ayala had refused to allow him to see the medical doctor at Osborn, but Warden Wright did not respond. Compl. ¶ 10. [Plaintiff] then followed up an administrative remedy/grievance, which Warden Wright rejected on the ground that [Plaintiff] never filed an inmate request form. *Id.* [Plaintiff] did, however, file a request for submitting his grievance. *Id.* [Plaintiff] later spoke with Warden Wright as he toured his housing unit. *Id.* Wright told him, "Nothing goes up the chain of command without [my] approval." *Id.* [Plaintiff] told Wright that he believed Wright was obstructing the administrative remedy process, to which Wright replied, "Sue me, I don't care." *Id.*

Initial Review Order at 2-4.

In support of his motion, Plaintiff states he requires pain medication, further medical evaluation, a bottom bunk pass, in-cell feed back status, a single cell, and a light duty work assignment. He contends that Defendants have not taken any corrective action

in response to his injury or limited mobility and that a preliminary injunction is warranted to prevent further irreparable harm.

Defendants offer evidence that Plaintiff was treated for his injury in January 2018 with ice, an ACE bandage wrap, and crutches.  He was also evaluated by orthopedist at the UConn Health Center, per Dr. Wright's request. Following that appointment, Plaintiff received pain medication, which Dr. Wright has continued to the present time.  And according to Dr. Wright, despite Plaintiff's claim of imminent harm, he has not submitted any inmate requests since January 2019 seeking treatment for his ankle. Based on this evidence, Defendants argue that a preliminary injunction is not warranted.[1]

**Discussion**

Preliminary injunctive relief is an extraordinary remedy and is never awarded as a matter of right.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Johnson v. Newport Lorillard*, No. 01-CIV-9587 (SAS), 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003).  "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Johnson*, 2003 WL 169797, at *1.  A movant seeking a preliminary injunction must establish (1) irreparable harm in the absence of the injunction and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.  *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984).

---

[1] The defendant also identify at least two occasions on which Plaintiff failed to attend a medical appointment or left before treatment was rendered.

With respect to the question of irreparable harm, courts presume that a movant has established irreparable harm in the absence of injunctive relief when the movant's claim involves the alleged deprivation of a constitutional right. *Jolly*, 76 F.3d at 482; *Mitchell*, 748 F.2d at 806. However, the likelihood of irreparable harm must be "actual and imminent," not speculative. *Lopez v. McEwan*, No. 3:08-CV-678 (JCH), 2010 WL 326206, at *8 (D. Conn. Jan. 22, 2010) (quoting *New York v. Nuclear Regulator Comm'n*, 550 F.2d 745, 775 (2d Cir. 1977)). Moreover, the Prison Litigation Reform Act requires that any prospective injunctive relief be "'narrowly drawn' and 'extend no further than necessary to correct the harm;' it must be 'the least intrusive means necessary to correct the harm.'" *Brown v. Benoit*, No. 3:17-CV-53 (SRU), 2017 WL 2434295, at *2 (D. Conn. June 5, 2017 (quoting 18 U.S.C. § 3626(a)(2)).

If the movant seeks a "mandatory injunction," meaning an injunction that changes the status quo by commanding the opposing party to perform an affirmative act, then the burden of proof is even greater with respect to the likelihood of success on the merits. The movant "must make a clear or substantial showing of a likelihood of success on the merits . . . a standard especially appropriate when a preliminary injunction is sought against the government." *Id.* (quoting *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006)). "[A] mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Banks v. Annucci*, 48 F. Supp. 3d 394, 421 (N.D.N.Y. 2014) (quoting *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)).

Here, Plaintiff seeks a mandatory injunction in the form of an order requiring the Defendants to change his cell status and bunk assignment and to prescribe him medication. Thus, he must satisfy the even higher burden of showing (1) imminent and actual irreparable harm in the absence of such relief, and (2) "a clear or substantial showing of a likelihood of success on the merits" of his claim. A review of the parties' submission reveals that Plaintiff has failed to satisfy this burden.

Plaintiff has not established that without the various forms of relief he requests, he will suffer actual and imminent irreparable harm. The medical evidence he relies upon and Dr. Wright's affidavit collectively establish that Plaintiff received treatment for his injury in January 2018 and thereafter. He continues to receive pain medication to the present time. Following his orthopedic consultation at UConn, DOC officials continued to provide Plaintiff with pain medication and ordered a brace for his ankle. Thus, the evidence belies Plaintiff's assertion that Defendants have failed to take "any corrective action." Nor has he provided any evidence that the failure to specifically provide him with a bottom bunk pass, single-cell status, a "light duty work assignment," or "in-cell feed back status" will result in irreparable harm. Indeed, the medical evidence Plaintiff presented does not address any of those remedies as being necessary or even recommended, to treat his ankle condition.

Similarly, Plaintiff has not made a "clear or substantial showing of a likelihood of success on the merits" on his Eighth Amendment claim. To prevail on a claim for deliberate indifference to a serious medical need under the Eighth Amendment, a prisoner must show both that the deprivation was serious and that the defendant acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir.

2003) (citing *Estelle*, 429 U.S. at 105).  The condition must be "one that may product

death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.

1996) (quoting *Hathaway*, 37 F.3d at 66).  Subjectively, the defendants must have been

actually aware of a substantial risk that the prisoner would suffer serious harm as a result

of their actions or inaction.  *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir.

2006); *see also Hathaway*, 99 F.3d at 553 (official must disregard excessive risk to

prisoner's health or safety).  Although Plaintiff has presented evidence showing a

"significant ligamentous injury" to his ankle, there is insufficient evidence that

Defendants' response to his injury amounted to deliberate indifference.  Plaintiff's

evidence shows that he received treatment for his injury, including crutches, a bandage,

ice, and pain medication. He received follow up consultations and eventually an ankle

brace. The record reflects that there is no current need for surgical intervention.  There is

evidence that Plaintiff continues to receive pain medication up to and including the

present.  Significantly, the Defendants assert that the Plaintiff has not sought any medical

treatment for his ankle since January 2019.

Plaintiff's belief that the treatment he is receiving is inadequate and that the

requested relief is the only form of relief necessary to treat his condition, when no

medical evidence supports that belief, is insufficient to establish a clear and substantial

showing of likely success on the merits.  *See Chance v. Armstrong*, 143 F.3d 698, 703

(2d Cir. 1998) (difference of opinion on appropriate response to medical condition

insufficient to show Eighth Amendment deprivation).  Therefore, Plaintiff's request for a

mandatory injunction is not warranted at this time.

**Conclusion**

Plaintiff's motion for preliminary injunctive relief (DE#28) is DENIED.

**SO ORDERED.**

Dated this 16th day of September 2019 at Bridgeport, Connecticut.

\_\_\_/s/_____
Kari A. Dooley
United States District Judge