UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DASHAWN PERRY,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     3:18cv1709 (KAD) |
| FUREY, et al.,<br>    Defendants. | :<br>:<br>: |

## RULING ON MOTION FOR SUMMARY JUDGMENT

On October 15, 2018, the plaintiff, Dashawn Perry, an inmate currently confined at the Osborn Correctional Institution ("Osborn") in Somers, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 against five state Department of Correction ("DOC") officials in their individual and official capacities: Health Services Administrator Richard Furey, Dr. Cary R. Freston, Dr. Johnny Wright, Correction Officer Ayala, and Warden Gary Wright. He asserts a claim of deliberate indifference to his medical needs in violation of the Eighth Amendment to the United States Constitution. (ECF No. 1). In an initial review order dated November 7, 2018, the Court permitted the plaintiff's Eighth Amendment claims based on deliberate indifference to medical needs to proceed against the defendants in their individual capacities for damages and in their official capacities for injunctive relief.

In a memorandum of decision dated September 16, 2019, the Court denied the plaintiff's motion for a preliminary injunction, seeking single-cell status, a bottom bunk assignment, pain medication, "in-cell feed back status," a "light duty work assignment," and "medical doctor attention."[1] (ECF No. 36).

---

[1] In its denial of the motion for preliminary injunction, the Court found that the plaintiff's "belief that the treatment he is receiving is inadequate and that the requested relief is the only form of relief necessary to treat his condition, when no medical evidence supports that belief, is insufficient to establish a clear and substantial showing of likely success on the merits." *Id.* at 7.

On August 16, 2019, the defendants filed a motion for summary judgment on the complaint in its entirety. (ECF No. 31). After the Court granted the plaintiff additional time to respond, the plaintiff's opposition to the motion for summary judgment was due on November 12, 2019. (ECF Nos. 35 & 38). On December 12, 2019, the plaintiff filed an untimely response to the motion for summary judgment. (ECF. No. 39). In light of the plaintiff's *pro se* status, the Court considers the plaintiff's response and his attached exhibits. For the reasons that follow, the defendants' motion for summary judgment is GRANTED.

## STANDARD OF REVIEW

A party seeking summary judgment must establish that there is no genuine dispute as to any material fact and that he is therefore entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense...." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of establishing, with admissible evidence, the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must come forward with evidence showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must

come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**FACTS[2]**

On January 6, 2018, the plaintiff injured himself playing basketball. Def.'s Rule 56(a)1 Statement, ECF No. 31-2 at ¶ 1. That same day, he sought and received medical treatment at the Osborn medical unit for his injury when he was evaluated by a nurse. *Id.* at ¶¶ 2-3, ex. A at ¶ 9. Dr. Cary Freston, the on-call physician, was notified of the plaintiff's injury. *Id.* at ¶ 3 ex. A at ¶ 10. The nurse recommended that the plaintiff follow the treatment protocol of rest, ice, compression and elevation ("RICE"). *Id.* at ¶ 4. He was also referred for an x-ray of his ankle

---

[2] The facts are taken from the defendants' Local Rule 56(a)1 Statement and supporting exhibits, including medical records, affidavits, and declarations. The plaintiff filed a response to the defendants' motion for summary judgment, but he did not file a statement of facts in compliance with Local Rule 56(a)2. Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." The defendants informed the plaintiff of this requirement in their *Notice to Pro Se Litigant*. ECF No. 31-3. Thus, the defendants' facts may be deemed admitted where supported by the evidence. Additionally, as the Complaint is verified, the Court may consider the allegations in reviewing the motion for summary judgment. *See Jordan v. LaFrance*, No. 3:18-CV-1541 (MPS), 2019 WL 5064692, at *1 (D. Conn. Oct. 9, 2019).

and recommended for a feedback tray, which would allow him to eat his meals in his cell with his foot elevated. *Id.* at ¶ 5, ex. A at ¶ 13. He was advised to use the crutches, ice, and an ACE bandage that were provided to him. *Id.* at ¶ 4- 5, ex. A at ¶ 12. He was also advised to use Motrin; however, he left the medical unit—against medical advice—prior to receiving the Motrin. *Id.* at ¶ 6, ex. B at ¶ 19.

Less than a week later, on January 11, 2018, Dr. Johnny Wright reviewed x-rays of the plaintiff's ankle and recommended to the Utilization Review Committee that the plaintiff have a consultation with an orthopedist. *Id.* at ¶ 7-8, ex. B at ¶ 21. On January 16, 2018, the plaintiff returned his crutches to the medical unit. *Id.* at ¶ 9, ex. B at ¶ 22.

After review on January 17, 2018, the Utilization Review Committee approved Dr. Wright's request for an orthopedic consultation, *Id.* at ¶ 8, ex. G at 128, which occurred on February 2, 2018 at UConn Health Center ("UConn"). *Id.* at ¶ 10, ex. B at ¶ 24. The records from UConn indicate that the plaintiff had an avulsion type fracture of the lateral calcaneus, which was consistent with ligamentous injury. *Id.* at ¶ 13, ex. G at 121. This type of fracture does not always require interventions such as a cast or surgery, and the doctors did not recommend surgical intervention. *Id.* at ¶¶ 14-15, ex. G at 121. The appointment note states:

> The patient can be weightbearing as tolerated for the left lower extremity. He should increase his activity as tolerated. He may use a lace-up ankle brace for support if he finds that it is beneficial for him. He can continue NSAID use ... He may ice and elevate the left lower extremity if he notices that it is swollen. He can follow up with the clinic on an as-need basis. All of this was explained to the patient and he was in agreement with the plan going forward.

*Id.* at ¶ 16, ex. G at 121.

Thereafter, the plaintiff had an appointment via telemedicine scheduled for February 27, 2018, for doctors at Osborn to review the results from the UConn orthopedic appointment with

4

him. *Id.* at ¶ 11. Dr. Freston and Dr. Wright both reviewed the documentation from UConn to discuss with the plaintiff. *Id.* at ex. A at ¶ 18, ex. B at ¶ 26. However, the plaintiff did not attend the telemedicine appointment.[3] *Id.* at ¶ 12, ex. A at ¶ 19, ex. B at ¶ 27.

The day prior however, the plaintiff, using an inmate request form requested pain relief and an ankle brace that had been recommended by the UConn orthopedists. *Id.* at ex. J. On March 13, 2018, Richard Furey, the relevant Health Services Administrator, responded to that inmate request, indicating that the plaintiff should be able to see Dr. Wright on March 14, 2018.[4] *Id.* at ¶¶ 34, 36, ex. C at ¶ 24, ex. J.

The record does not indicate that the plaintiff was seen by Dr. Wright on March 14, 2018. However, on April 11, 2018, the plaintiff did have an appointment with Dr. Wright at the Osborn medical unit. *Id.* at ¶ 21, ex. G at 113, ex. K; Compl. ECF No. 1 at ¶ 9. On that day, Correction Officer Ayala, who is a custody staff member, was assigned to receive inmates at the medical unit. ECF No. 31-2 at ¶ 43, 46, ex. D at ¶¶ 5, 6, 7. In her affidavit, she avers that she checked the plaintiff into the medical unit before he was taken into the medical area by certified nurse assistant inmate Flores. *Id.* at ¶ 46, ex. D at ¶ 12. When she heard the plaintiff "getting loud," she approached him to determine whether there was a safety concern. *Id.* at ¶ 48-49, ex. D at ¶¶ 14-15. The plaintiff appeared agitated and upset about having his vital signs taken by another inmate. *Id.* at ¶¶ 49-50, ex. D at ¶¶ 16-17. The plaintiff was moved back into the waiting area

---

[3] In his affidavit, Dr. Wright states that the plan from UConn was not implemented because the plaintiff did not appear for his appointment. *Id.* at ex. B at ¶ 32.

[4] According to his declaration, Furey responds to inmate requests when he receives them and facilitates medical care for inmates, without rendering medical decisions. *Id.* at ¶ 32-33, ex. C at ¶ 4. As a Health Services Administrator, he also responds to appeals of administrative remedies for administrative or operational issues. *Id.* at ¶ 34, ex. C at ¶ 15.

where Correction Officer Ayala asked him whether he had an issue with CNA Flores. *Id.* at ¶ 55, ex. D at ¶¶ 18, 19. He responded, "No." *Id.* at ¶ 55 ex. D at ¶ 21. She then asked him whether he intended to place his hands on the CNA. *Id.* at ¶ 56, ex. D at ¶ 22. The plaintiff responded that there was going to be a problem. *Id.* at ¶¶ 56, ex. D at ¶ 23. A nurse then explained that the inmate CNAs were certified and qualified to take his vital signs, and that it would be noted as a refusal of medical care if he did not have his vital signs taken. *Id.* at ¶ 57, 59, ex. D at ¶¶ 23, 25. The plaintiff indicated he was "done" and left the medical unit. *Id.* at ¶ 60, ex. D at ¶ 26.

In a grievance dated May 1, 2018, the plaintiff complained that he had been denied medical treatment by Dr. Wright when he refused to have his vital signs taken on April 11, 2019. *Id.* at ex. K. In that grievance, he requested to have Correction Officer Ayala informed that "her post in medical is for safety and security and as such she in no way should be involved in any medical decision made regarding any inmate." *Id.* The grievance included both a complaint about having his vital signs taken by an inmate CNA and Correction Officer Ayala's conduct. The grievance was rejected and returned with the notation that the plaintiff had failed to complete the informal resolution process with respect to Officer Ayala prior to filing the grievance as required by Administrative Directive 9.6. The plaintiff was further advised that the portion of the grievance addressed to the use of inmates taking vital signs had to "go through medical."[5] *Id.* at ex. K.

---

[5] The defendants submitted an unsigned declaration from Warden Gary Wright, which represents that Warden Wright received the plaintiff's grievance complaining about having his vital signs taken by an inmate CNA and Correction Officer Ayala's conduct, which involved both medical and custody issues; the declaration states that Warden Wright had authority over the custody claim against Correction Officer Ayala, concerning her alleged involvement in medical decisions, and that the grievance was rejected due to the plaintiff's failure to complete the informal process. *Id.* at ¶ 72-74, ex. E, ¶¶ 8-16, & ex. K. Although the affidavit was unsigned, the plaintiff's allegations and the record confirm these representations. *See* Compl. at ¶ 10; ECF No. 31-2, ex. K.

On May 16, 2018, Furey received the plaintiff's inmate request form, requesting to be seen by a doctor. *Id.* at 37, ex. C at ¶ 25. He responded to this inmate request form, indicating that plaintiff had a scheduled appointment with the doctor the next week. *Id.* at ¶ 37, ex. C at ¶ 26. Furey also responded to the plaintiff's "separate inmate request forms [submitted] to medical on May 16, 2018, indicating that he had re-injured his left foot, was in pain and sought medication for his pain." *Id.* at ¶ 38, ex. C at ¶¶ 27, 39, ex. J.[6] Shortly thereafter, the plaintiff was seen at the medical unit for a complaint of pain, at which time a nurse provided him with ibuprofen. *Id.* at ¶ 24, ex. B at ¶ 38, ex. G at 93, 95.

On August 22, 2018, Dr. Wright saw the plaintiff. *Id.* at ¶ 25, ex. B at ¶ 39. At that time, additional x-rays were taken, his treatment was reviewed, and a brace was ordered for his foot. *Id.* at ¶ 25, ex. B at ¶ 39. Dr. Wright also ordered a prescription for ibuprofen. *Id.* at ¶ 25, ex. B at ¶ 39. Dr. Wright saw the plaintiff again in December 2018 for other medical concerns, but he discussed the results of the x-rays and the outlook for the plaintiff's ankle injury at that appointment. *Id.* at ¶ 27, ex. B at ¶¶ 42-43. The plaintiff's prescription for ibuprofen continues to the present time. *Id.* at ex. B ¶ 44. Between January 2019 to August 2019, the plaintiff submitted several inmate requests, but such requests were unrelated to his ankle injury. *Id.* at ¶ 28, ex. B at ¶ 45.

**DISCUSSION**

The plaintiff alleges that all of the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. He alleges that nursing staff denied his requests for

---

[6] Exhibit J reflects that Furey responded to the May 16, 2018 inmate request form on May 17, 2018, indicating that the plaintiff had a doctor appointment the next week.

7

pain medication, an x-ray, a doctor's appointment, and a bottom bunk pass. Compl. at ¶¶ 2-3. Specifically, he alleges Dr. Freston did not respond to his reports of pain; *Id.* at ¶ 5; Administrator Furey and Dr. Freston failed to ensure the treatment plan provided by UConn was followed by medical staff at Osborn; *Id.* at ¶ 6; and he did not receive an appointment with Dr. Wright despite making formal requests. *Id.* at ¶ 7-8. Plaintiff further alleges that Correction Officer Ayala interfered with his ability to be seen by Dr. Wright when he refused to have his vitals taken by an inmate CNA; *Id.* at ¶ 9; that Furey failed to respond to his inmate requests for medical care; *Id.* at ¶¶ 3, 7-8; and Warden Wright rejected his grievance against Correction Officer Ayala and obstructed the plaintiff's administrative remedies process. *Id.* at ¶ 10.

Eighth Amendment[7]

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether "manifested by-prison doctors in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–105 (1976). (internal quotation marks and citation omitted).

To state a claim for deliberate indifference to a serious medical need, a plaintiff's claim must satisfy both objective and subjective elements. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). First, the alleged deprivation "must be, in objective terms, sufficiently serious." *Id.* (quotations and citations omitted). "Second, the charged official must act with a sufficiently culpable state of mind." *Id.* With respect to the objective prong, factors relevant to the

---

[7] Some of the defendants assert that the plaintiff did not exhaust his administrative remedies, as required, prior to bringing this action. For purposes of this decision, the Court assumes, without finding, that the plaintiff exhausted his administrative remedies as to each defendant.

seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

To satisfy the subjective *mens rea* prong, the plaintiff must establish that the prison official or medical staff member was actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and ignored that risk. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (internal quotation marks and citation omitted). Further, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *see also Hathaway*, 37 F.3d at 70 ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").

For purposes of ruling on this motion for summary judgment, the Court assumes that the plaintiff's medical condition stemming from his ankle injury is sufficiently serious to satisfy the objective element. However, the record evidence affords no inference that any of the defendants acted with deliberate indifference to the plaintiff 's medical needs under the standards set forth above. Plaintiff is clearly dissatisfied with the treatment he received, and the manner in which it

9

was given. But it is manifest that he received adequate medical care for his ankle injury and continues to receive adequate care for his ankle injury. Plaintiff's professed personal opinion to the contrary fails to account for his own role in the treatment he did and did not receive and does not create a genuine issue of material fact in any event.

Dr. Freston

The evidence establishes that the plaintiff received medical treatment from the Osborn medical unit immediately following his injury. Dr. Freston was notified of the injury and the plaintiff was advised of the recommended treatment protocol for his injury. He was provided with crutches, an Ace bandage, and ice. He was not prevented from receiving pain medication as averred. To the contrary, he left the medical unit against medical advice prior to receiving the prescribed pain medication. The record further fails to evince an inference that Dr. Freston acted with conscious disregard of a substantial risk for serious harm to the plaintiff by failing to ensure that the UConn treatment plan was followed by Osborn staff. Again, the plaintiff failed to appear at the conference with Dr. Preston and Dr. Wright to discuss the UConn treatment plan. But even if a claim could be made that Dr. Freston acted negligently in this regard, negligent conduct does not constitute deliberate indifference in the context of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835. The motion for summary judgment as to Dr. Freston is GRANTED.

Dr. Wright

The record evidence demonstrates that Dr. Wright also provided the plaintiff with the medical care he needed by reviewing x-rays of his ankle, recommending him for a consultation with the orthopedists at UConn, discussing the outlook of the injury with him at an appointment

regarding other medical needs, providing him with a brace and a continuing prescription for ibuprofen. There is simply no evidence from which an inference might be drawn that Dr. Wright acted with deliberate indifference by denying the plaintiff pain medication; failing to ensure implementation of plaintiff's treatment plan; or causing any delay in providing an ankle brace or doctor appointments. As previously observed, pain medication was delayed initially because the plaintiff left the medical unit before it was administered. The ankle brace was delayed because the plaintiff missed the February 27, 2018 appointment with Drs. Wright and Freston. And additional treatment was delayed because the plaintiff walked out of the medical unit before he could be seen on April 11, 2018. The motion for summary judgment as to Dr. Wright is GRANTED.

### Richard Furey

Similarly, the plaintiff has not demonstrated, that Furey acted with deliberate indifference to his serious medical needs. The record evidence establishes that Furey issued timely responses to the plaintiff's inmate requests for treatment and arranged medical care with a doctor or the medical staff on an as needed and as requested basis. The mere fact that the plaintiff believes he should have been seen sooner or more frequently than he was does not create a deprivation of constitutional dimension. The motion for summary judgment as to Furey is GRANTED.

### Correction Officer Ayala

The record evidence raises no inference that Correction Officer Ayala was even aware of the plaintiff's specific medical condition. She was merely in the medical unit during the course of the April 11, 2018 medical appointment when the plaintiff refused to have his vital signs taken and left the unit before being seen. Accordingly, there is no record evidence to support any

11

inference that Officer Ayala acted with deliberate indifference to his medical needs on April 11, 2018. The motion for summary judgment as to Officer Ayala is GRANTED.

Warden Wright

Warden Wright's handling of plaintiff's grievance concerning Correction Officer Ayala fails to support any inference that he acted with deliberate indifference to the plaintiff's serious medical needs. The plaintiff's grievance complained about Correction Officer Ayala's conduct and requested action concerning Ayala's duties as a member of the custody staff. *See* ECF. No. 31-2 at ex. K. As noted above, Officer Ayala's conduct, which was the subject of the grievance, did not implicate the plaintiff's Eighth Amendment rights or provide evidence of deliberate indifference on her part. Accordingly, neither does Warden Wright's handling of the grievance regarding Officer Ayala implicate such rights. Finally, there is no evidence that Warden Wright acted to obstruct the plaintiff's administrative remedies process. To the extent that the plaintiff claims that Warden Wright's processing of his grievance was improper, the plaintiff cannot establish a constitutional violation on the basis of Warden Wright's violation of the grievance procedure.[8] *See Solek v. Naqvi*, No. 3:16-CV-947 (JAM), 2016 WL 7427213, at *3 (D. Conn. Dec. 23, 2016) ("It is well-established that inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those

---

[8] Warden Wright would also be entitled to qualified immunity to the extent that the plaintiff asserts supervisory liability on the basis of his handling of the plaintiff's grievance because the law is not clear "whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of." *See Allah v. Semple*, No. 3:18-CV-00887 (JAM), 2018 WL 3733970, at *7 (D. Conn. Aug. 6, 2018) (affording qualified immunity to supervisory defendants who had denied administrative appeals and responded to his letter complaints.) *See Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) (qualified immunity requires showing that official violated clearly established law and noting that, in the supervisory liability context, a court's focus must be on whether the law was clearly established both as to the underlying constitutional violation as well as supervisory liability doctrine by which the supervisor would be held liable).

procedures does not give rise to a cognizable § 1983 claim."). The motion for summary judgment as to Warden Wright is GRANTED.

**CONCLUSION**

For the reasons stated above, the defendants' motion for summary judgment [ECF No. 31] is GRANTED in its entirety. The Clerk of the Court is directed to enter Judgment in favor of the Defendants and close this case.

\_\_/s/_____

Kari A. Dooley
United States District Judge

**SO ORDERED** this 6th day of January 2020, at Bridgeport, Connecticut.